STATE OF CONNECTICUT *v.* BERNARD AVCOLLIE

HOUSE, C. J., LOISELLE, BOGDANSKI, LONGO and SPEZIALE, Js.

Argued November 1—decision released December 20, 1977

*Theodore I. Koskoff* and *John D. Jessup,* in support of the motion.

*Francis M. McDonald, Jr.,* state's attorney, in opposition.

This opinion is the result of collaboration on the part of all members of the court to an unusual degree. See *State* v. *Hayes,* 127 Conn. 543, 549, 18 A.2d 895. The defendant moves to dismiss the state's appeal challenging the court's action in setting aside the jury's verdict of guilty and rendering a judgment of acquittal. The pertinent facts of the case are as follows.

On July 20, 1977, the foreman of a jury of twelve announced in open court that a verdict had been reached. After calling the roll of the jury, the clerk, following established procedures, asked, "Is Bernard Avcollie guilty of the crime of murder, in violation of § 53a-54a of the Connecticut General Statutes, or not guilty?" to which the foreman responded, "He is guilty."

At this point, the defendant's counsel asked that the jury be requested to retire, prior to acceptance of the verdict. After the court had excused the jury, the defense renewed several pending motions including a motion under Practice Book § 255 that the verdict be set aside, that an order for a judgment of dismissal be entered, and that the defendant be discharged from custody. The court responded, expressing its intention to set aside the verdict, whereupon the state requested permission to appeal to the Supreme Court:

"Mr. McDonald: I am asking for permission to take this matter to the state's Supreme Court.

"The Court: I will rule on that at the proper time.

"Mr. McDonald: I would like to ask for a ruling now.

"The Court: The motion is denied.

"Mr. McDonald: Then you are not giving me permission to take an appeal to the state's Supreme Court?

"The Court: Bring in the jury, sheriff."

Upon the jury's return to the courtroom, the court announced: "I am setting aside the verdict of guilty and acquitting the defendant, under the rules, under the prerogatives vested in me as a judge of this court." The jury were discharged, and, in response to a request by the defendant's counsel that the accused be discharged from custody and his bond released, the court replied, "He may be discharged." When the state's attorney excepted, the court explained, "There is no fear that he is going to flee the jurisdiction. The bond may be released."

On July 22, 1977, the court heard argument on the state's motion to take an appeal.[1] Counsel for the defendant appeared with the defendant to argue against the motion, but stated, "We are not here presenting our argument in the case of *State of Connecticut* v. *Bernard Avcollie* because that case does not exist any more by virtue of what already happened. We are here as a courtesy to the court."

---

[1] See General Statutes § 54-96.

The court stated that it had called the hearing because the transcripts of the July 20 hearing revealed an ambiguity in the discourse between the court and the state's attorney. The court, then, proceeded to deny the state permission to appeal. "I have given a great deal of thought to allowing you to appeal this case and I have no reason to not allow you to do it but you will do it by way of a writ of error, which is your right under the statute."

Finally, again on the trial court's motion, another hearing was held on August 1, 1977, for "a rehearing on the state's request for permission to appeal." On August 3, the court "rescinded" its previous denial of permission to appeal and granted the requested permission.

The state has appealed to this court, and the defendant now seeks to have the appeal dismissed.

The issues to be determined by the motion to dismiss the appeal are:

1. Whether a valid jury verdict of guilty exists in this case.

2. Whether the court's July 20, 1977, "discharge" of the defendant terminated the court's in personam jurisdiction, thereby rendering the subsequent hearings invalid.

3. Whether, by virtue of the trial court's July 22 "denial" of permission to appeal, this court has subject-matter jurisdiction under General Statutes § 54-96.

The defendant claims that, since the jury's verdict of guilty was never formally "accepted" by the court, a valid guilty verdict never existed in this

case. On the basis of this premise, it is argued that any action taken by this court unfavorable to the trial court's action—claimed by the defendant to constitute a judgment of acquittal—would necessitate another trial, in violation of the double jeopardy clause of the United States constitution.

To substantiate his claim that no valid jury verdict exists, the defendant relies heavily upon *State* v. *DiPietro,* 120 Conn. 537, 538–39, 181 A. 716, in which the court delineates the "settled practice in this [s]tate" for the establishment of a valid jury verdict: "[T]he course of proceedings upon the return of the jury into court in a criminal case is substantially as follows: The court being in actual session, the clerk calls the roll of the jury and asks if they have agreed upon their verdict. If the foreman answers that they have, the clerk then asks whether they find the accused guilty or not guilty. The foreman answers 'guilty' or 'not guilty' as the case may be. The clerk then says to the jury: 'Gentlemen of the Jury, harken to your verdict as accepted and ordered recorded by the court. You upon your oaths do say that the prisoner at the bar is guilty (or not guilty) so say you, Mr. Foreman, and so, gentlemen, say you all.' The foreman and members of the jury: 'We do.'" The apparent purpose of this procedure is to ensure that the court, counsel and the jurors have a common understanding of the verdict, that it is the verdict to which each juror has assented, and that ample opportunity is afforded to cure any misunderstanding. *Ferris* v. *Hotel Pick Arms, Inc.,* 147 Conn. 72, 74, 157 A.2d 106; *State* v. *DiPietro,* supra. While it is true, as the *DiPietro* court recognizes (p. 539), that "[u]ntil a verdict is accepted by the court, it is not a verdict at all," it does not follow that a verdict

is deficient if the process leading to acceptance does not precisely conform to the usual, accepted practice.[2]

In the present case, the usual practice outlined in *DiPietro* was begun: the jury returned to the courtroom, in which both counsel and the defendant were present, and the judge asked whether they had reached a verdict; the jury foreman answered, "We have, Your Honor," and the clerk called the name and number of each juror, the juror rising in response; the clerk asked, again, if they had reached a verdict, and, again, the foreman answered, "Yes, we have"; the clerk asked the accused to stand and face the jury and the jury, having been reminded that they were sworn in, were asked, "What say you as to case number 12,468, *State of Connecticut* v. *Bernard Avcollie.* Is Bernard Avcollie guilty of the crime of murder, in violation of § 53a-54a of the Connecticut General Statutes, or not guilty?" to which the foreman responded, "He is guilty." At this juncture, the defense counsel intervened, asking that the court excuse the jury "before the verdict is accepted." In the absence of the jury, during the following interaction among both counsel and the

[2] None of the cases which affirms the procedure outlined in *State* v. *DiPietro*, 120 Conn. 537, 181 A. 716, requires rigid adherence to it; it is, rather, a practice referred to as "approved procedures in receiving the verdict"; *Tough* v. *Ives*, 162 Conn. 274, 278, 294 A.2d 67; or, "[t]he procedure which has been followed in our courts for many years." *Ferris* v. *Hotel Pick Arms, Inc.*, 147 Conn. 72, 74, 157 A.2d 106. As the court in *Raymond* v. *Bell*, 18 Conn. 81, 90, stressed, "[a]ll that is required is, that the verdict should be rendered in open court by the whole jury. The only convenient and proper form to do this, is that which is usually practiced in our superior and county courts; but it does not follow that there may not be other less convenient and less proper modes by which a verdict may be received." See also 4 Wharton, Criminal Procedure (12th Ed. 1976) § 583.

court, the court in response to the defendant's own motion expressed its intention to "set aside the verdict."

The defendant's motion to have the verdict set aside arose under § 255 of the Practice Book, which provides, in part: *"After the acceptance of a verdict . . .* a party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside." (Emphasis added.) By interrupting the established procedure for acceptance of the verdict, the defendant effectively waived compliance with that procedure. By setting aside the verdict, the court impliedly accepted the jury's verdict of guilty, and this acceptance became final upon his subsequent announcement of his action to the jurors.[3] The procedure followed, while not in compliance with the preferred, established form commonly adhered to, provided adequate safeguards to ensure a common understanding of the verdict: the verdict was rendered in open court by the foreman in the presence of the entire jury, the court, and counsel. Further, the defendant makes no claim that the jury did not assent to the verdict as announced by their foreman, and adequate opportunity was afforded the jury to clarify any misunderstanding. Under these circumstances it cannot be said that a valid jury verdict of guilty, subsequently set aside by the court, does not exist in this case.

[3] In order for a verdict to be set aside, a verdict must exist. See *State* v. *Searles,* 113 Conn. 247, 256, 155 A. 213, and *Black* v. *Griggs,* 74 Conn. 582, 584, 51 A. 523. (Both courts distinguish the power of a judge to return the jury for further consideration from the power to set aside a verdict, emphasizing that in the former situation the power must be exercised *before* the verdict is accepted.)

Since a valid verdict exists, no double jeopardy bar rises to preclude an appeal in this case. The state's appeal seeks a reversal of the court's action in setting aside the verdict. If error is found, no further fact finding, no additional trial, would be necessary, for the jury verdict would simply be reinstated. In a recent opinion, the United States Supreme Court stated: "When a case has been tried to a jury, the Double Jeopardy Clause does not prohibit an appeal by the Government providing that a retrial would not be required in the event the Government is successful in its appeal. *United States* v. *Wilson*, . . . [420 U.S. 332, 344–45, 352–53, 95 S. Ct. 1013, 43 L. Ed. 2d 232]. *When this principle is applied to the situation where the jury returns a verdict of guilt but the trial court thereafter enters a judgment of acquittal, an appeal is permitted.* In that situation a conclusion by an appellate court that the judgment of acquittal was improper does not require a criminal defendant to submit to a second trial; the error can be corrected on remand by the entry of a judgment on the verdict. To be sure, the defendant would prefer that the Government not be permitted to appeal or that the judgment of conviction not be entered, but this interest of the defendant is not one that the Double Jeopardy Clause was designed to protect." (Emphasis added.) *United States* v. *Jenkins*, 420 U.S. 358, 365, 95 S. Ct. 1006, 43 L. Ed. 2d 250. The principle enunciated in that case is clearly applicable to the case before us.

The defendant claims that his discharge from custody and release from bond by the court, directly after the verdict was set aside, terminated the court's in personam jurisdiction, rendering the subsequent rehearings on July 22 and August 1

improper.[4] In those cases in which the state, at the time judgment is rendered, expresses an intention to seek an appeal[5] the defendant is not entitled to discharge until the state's motion to appeal is finally determined. "It is necessary that he [the prosecutor] determine at the time of the judgment that he ought to ask the court for permission to take such appeal, so that the accused shall not be forthwith discharged; to that he is entitled *unless the prosecutor shall move for such permission.* If permission be granted, he will not be entitled to discharge until the appeal has been determined in his favor, or withdrawn." (Emphasis added.) *State* v. *Carabetta,* 106 Conn. 114, 119, 137 A. 394.

It is clear from the transcript that on July 20, 1977, when judgment was rendered setting aside the jury verdict, the state immediately expressed its intention to seek permission to appeal. Unless the court clearly denied the state permission to appeal at that time, the defendant was not then entitled to discharge. No such clear denial is apparent. Indeed, the July 20 transcript reveals that the court, having stated in response to the state's motion to appeal, "I will rule on that at the proper time," failed subsequently to respond to the state's attorney's direct inquiry as to whether permission had been denied. Recognizing the ambiguity which appears on the face of this transcript as to the status of the state's appeal, the court

[4] Both parties at the time the motion to dismiss was argued, and in this court, argued in relation to Practice Book § 481. This provision, repealed on October 1, 1976, remained applicable to proceedings, such as this, in which the arrest was made or a summons issued prior to that day.

[5] For a full discussion of appeals by the state in criminal actions, see *United States* v. *Wilson,* 420 U.S. 332, 95 S. Ct. 1013, 43 L. Ed. 2d 232.

called for a full hearing on the state's motion on July 22. Both counsel argued the motion and it was, finally, denied on that day, the court indicating, "I have given a great deal of thought to allowing you to appeal this case." Clearly, had the court already denied the state's motion to appeal, no further consideration would have been necessary. Because no final decision as to the appeal was made on July 20, any discharge granted on that day was ineffective because the defendant was not then entitled to full discharge. The court itself, in ordering a discharge and releasing the defendant from bond, did not intend to release the defendant from the court's in personam jurisdiction, for, upon the state's exception, the court assured counsel, "There is no fear that he [the defendant] is going to flee the jurisdiction."[6] It is therefore evident that the court retained in personam jurisdiction over the defendant until the state's motion to appeal was finally acted upon by the court on July 22.

General Statutes § 54-96 provides: "Appeals from the rulings and decisions of the superior court, upon all questions of law arising on the trial of criminal cases, may be taken by the state, with the permission of the presiding judge, to the supreme court. . . ." The original version of this statute, enacted in 1886, clearly indicates an intention by the legislature to extend the right of appeal in criminal cases to the state. *State* v. *Lee,* 65 Conn. 265, 278, 30 A. 1110. The provision that permission from the trial judge be obtained was a limitation on the right of appeal granted the state. This condition is generally considered to be a prerequisite to appeal by the state. *State* v. *Audet,* 170 Conn. 337, 340–42,

---

[6] Effectively the court was releasing the defendant on his own recognizance, rather than fully discharging him.

365 A.2d 1082. However, as the dominant intention of the legislature was to extend the right of appeal to the state, the limitation placed upon that right is one which must be so exercised as to avoid abuse and unreasonable consequences. *Tileston* v. *Ullman,* 129 Conn. 84, 94, 26 A.2d 582; *State* v. *Nelson,* 126 Conn. 412, 11 A.2d 856; *Dorman* v. *Carlson,* 106 Conn. 200, 203, 137 A. 749; 73 Am. Jur. 2d, Statutes, § 265. The court's granting or denial of the state's motion to appeal constitutes a "judicial determination" within the court's discretion. *State* v. *Carabetta,* supra, 118. Ordinarily, this court will not review rulings made in the exercise of a court's discretion. Maltbie, Conn. App. Proc. § 59. In those cases of manifest abuse, however, where injustice appears to have been done, this court will grant review to determine whether the court's exercise is "so unreasonable as to constitute an abuse of discretion." *Hayward* v. *Plant,* 98 Conn. 374, 382, 119 A. 341; see also *State* v. *Brown,* 169 Conn. 692, 702, 364 A.2d 186. Section 54-96 does not, therefore, preclude an appeal by the state seeking review of the court's denial of permission to appeal in those unusual cases in which the state has properly and expeditiously expressed its intention to seek appeal at the time of judgment and the court's denial was so arbitrary as to constitute an extreme abuse of discretion rendering the denial ineffective. In such cases the statute's condition requiring the court's permission to appeal cannot serve to insulate a trial court from review by this court; rather, the statute as a whole remains operative to allow appeal by the state. A proviso should be "so interpreted as not to destroy the remedial processes intended to be accomplished by the enactment." *Shilkret* v. *Musicraft Records, Inc.* 131 F.2d 929,

931 (2d Cir.), cert. denied, 319 U.S. 742, 63 S. Ct. 1030, 87 L. Ed. 1699; see also 73 Am. Jur. 2d, Statutes, § 321.

In the present case, just such a clear and extreme abuse of discretion is evident. In denying the state permission to appeal on July 22, 1977, the court, speaking to the state's attorney, commented, "I have given a great deal of thought to allowing you to appeal this case and I have no reason to not allow you to do it." Setting aside a verdict rendered by a jury is an extremely serious matter. See *Camp* v. *Booth,* 160 Conn. 10, 13, 273 A.2d 714. To deny permission to appeal such a ruling cannot be so arbitrarily done. Because it is clear, by the court's own admission, that there was no considered reason for denying the state the opportunity to appeal, its action is arbitrary and an abuse of its discretion, rendering the refusal invalid.

In those cases in which an abuse of discretion is manifest or where injustice appears to have been done, reversal is required. *State* v. *Brown,* supra. Ordinarily, when confronted with such a situation, this court would reverse the trial court's denial of permission to appeal; see *Husted* v. *Mead,* 58 Conn. 55, 69, 19 A. 233; remanding the case to the trial court with directions. In this case, we would direct the trial court to enter an order granting the state permission to appeal. In light of both the trial court's expression of its intention to grant the appeal,[7] and the fact that our directions would, in any case, be binding upon the court below; Maltbie, Conn. App. Proc. § 345; we find a remand to be unwarranted. As this court in *Campbell* v. *Rocke-*

---

[7] On August 3, the trial court, on its own motion, "rescinded" its July 22 order denying the state permission to appeal and granted the state's motion to appeal.

*feller,* 134 Conn. 585, 589, 59 A.2d 524, noted, "[t]o return the case to the trial court . . . would necessarily bring about the same result as would come from our determination of the matter now; it would be a useless procedure, for the final result would not be changed." We therefore find that the state is within its rights in pursuing this appeal pursuant to § 54-96.

On the basis of the foregoing, it is determined that this court has jurisdiction over this appeal, within the meaning of § 54-96. The defendant's motion to dismiss the appeal is denied.