STATE OF CONNECTICUT *v.* JOHN A. MARTIN
(10962)

PETERS, HEALEY, PARSKEY, SHEA and GRILLO, Js.

Argued October 25, 1982—decision released January 4, 1983

*Marcia B. Smith,* deputy assistant state's attorney, for the appellant (state).

*Louis S. Avitabile,* special public defender, for the appellee (defendant).

SHEA, J. The defendant was charged with assault in the third degree; General Statutes § 53a-61; risk of injury to a minor; General Statutes § 53-21; and interference with a police officer; General Statutes § 53a-167a; as the result of an incident with a neighbor's child. The jury returned a verdict of not guilty on the assault charge, but found the defendant guilty on the other two counts. The trial court imposed sentence on the count charging interference with a police officer but set aside the guilty verdict on the risk of injury charge and rendered a judgment of acquittal on that charge. The state has appealed from that judgment.[1] The state

---

[1] During oral argument it was discovered that our normal procedures for the rendition of a jury verdict had not been followed in this case. The defendant did not raise this irregularity in the trial court nor was it claimed as error in this appeal until questions from the bench brought it to light. See Practice Book §§ 3063, 3012 (a) and 3060F (a). Since the defendant had a fundamental constitutional right to a jury trial, we deem it appropriate to consider whether the deviation from our established practice which occurred constitutes a violation of that right or should be noticed as "plain

claims the trial court erred in setting aside the verdict, whether the basis for the court's decision was that the evidence was insufficient to support the verdict or that an acquittal on the assault charge was inconsistent with a guilty verdict on the risk of injury charge. The defendant argues that the trial court's decision to set aside the verdict should be upheld because the evidence was insufficient to support a guilty verdict. In the alternative, the defendant claims that the com-

---

error" in the interests of justice. *State* v. *Evans*, 165 Conn. 61, 70, 327 A.2d 576 (1973); Practice Book § 3063.

The transcript of the proceedings at the time the verdict was returned indicates the following:

"The Court: Bring in the jury. Will the clerk please take the roll call.

"The Clerk: Ladies and gentlemen of the jury, please answer to your name, and as you are called, rise. Are you agreed upon a verdict in the case of the State of Connecticut v. John Allen Martin?

"Foreman: Yes, we have.

"The Clerk: Mr. Foreman, on the first count, charging the accused with risk of injury to a minor, what say you, is he guilty or not guilty?

"Foreman: Guilty.

"The Clerk: On the second count, charging the accused with assault in the third degree, what say you, is he guilty or not guilty?

"Foreman: Not guilty.

"The Clerk: On the third count, charging the accused with interference, what say you, is he guilty, or not guilty?

"Foreman: Guilty.

"The Clerk: You upon your oaths do say that on the first count charging the accused with risk of injury with a minor mentioned in the information he is guilty and on the second count charging the accused with assault in the third degree mentioned in the information he is not guilty and on the third count charging the accused with interference mentioned in the information he is guilty and so say you all?

"Ladies and gentlemen of the jury, attend to your verdict as accepted by the Court and recorded—

"The Court: Not yet. You may be seated, ladies and gentlemen. I want to thank you very much for your participation in this case. I know that this is a very anticlimactical aspect of every case because most jurors want to know how the Judge feels about their verdict and the Judge is not supposed to tell you about how he feels

plaining witness, who was six years old at the time
of trial, lacked competency to testify, and that the
trial court erred in admitting his testimony, with-
out which there would be insufficient evidence to
convict the defendant of risk of injury to a minor.
The defendant also claims that the guilty verdict
should not be reinstated because the trial court
improperly instructed the jury on the general
intent element of the crime of risk of injury. He
claims also that a new trial is prohibited because it
would subject him to double jeopardy.

about the verdict. It's your verdict and not my verdict. Conse-
quently, all I can do is thank you for your patience. Ladies and
gentlemen, you're free to go.

"Are there any motions?"

The action of the trial court in deferring acceptance of the ver-
dict and in excusing the jury before doing so was contrary to our
standard procedure for the establishment of a valid jury verdict
as described in *State* v. *DiPietro,* 120 Conn. 537, 538–39, 181 A. 716
(1935). See *State* v. *Avcollie,* 174 Conn. 100, 104, 384 A.2d 315
(1977). The delivery of the verdict by the foreman of the jury
orally in open court and the proclamation by the clerk of that
verdict as understood and ordered recorded by the court provide
"a double safeguard against mistake." *State* v. *DiPietro,* supra,
539. "After the verdict has been announced and before it has been
accepted, the court may refuse to accept it if it is not in proper
form or otherwise imperfect, or it may refuse to accept it for the
time being and return the jury to a second and even third consider-
ation of the case." Id.; see General Statutes § 52-223; Practice
Book § 311. "The judicial authority shall, if the verdict is in order
and is technically correct, accept it without comment." Practice
Book § 868. The trial court seems to have been under the mistaken
impression that acceptance of the verdict would preclude setting it
aside later. Obviously a verdict cannot be set aside unless it first
has been validly rendered. Acceptance of the verdict signifies merely
that the court views it as satisfactorily responding to the issues in
the case and that returning the jury for further consideration is
not warranted.

Rigid adherence to our established procedure, though salutary,
is not an absolute prerequisite to the rendition of a jury verdict.
*State* v. *Avcollie,* supra, 104–105. "All that is required is, that the
verdict should be rendered in open court by the whole jury."
*Raymond* v. *Bell,* 18 Conn. 81, 90 (1846). Unlike our practice, fed-
eral courts do not provide an automatic check upon the unanimity

The defendant, John Allen Martin, lived with Louise Evon, who had an arrangement to care during working hours for the child of a neighbor who lived in another apartment in the building. Under the arrangement Louise supervised the child, Jonathan, in her own apartment from the time he returned home from school until his mother returned home from work late in the evening. On

of the verdict announced by the foreman of the jury by means of further inquiry directed to the jury as a whole. Fed. R. Crim. Proc. § 31(a); see *Miranda* v. *United States*, 255 F.2d 9, 17 (1st Cir. 1958). A poll of the individual jurors must be conducted upon the seasonable request of a party or upon the court's own motion. Fed. R. Crim. Proc. § 31(d). Some other jurisdictions have established procedures similar to our standard procedure by court rule or by statute. See Fla. Rules of Crim. Proc., Rule 3.440, p. 156; *Givens* v. *State*, 76 Md. 485, 25 A. 689 (1893); *Longfellow* v. *State*, 10 Neb. 105, 4 N.W. 420 (1880); *State* v. *Jackson*, 21 S.D. 494, 496–98, 113 N.W. 880 (1907).

The action of the trial court in discharging the jury prior to ordering the verdict accepted and recorded does not have the effect of invalidating it. *State* v. *Avcollie*, supra, 106; *State* v. *DiPietro*, supra, 540. The verdict was not defective in form and the discharge of the jury indicates that the trial court had no intention of returning them for further consideration of the case as authorized by the rule or the statute. This action, to which there was no objection by either party, has deprived the defendant of the additional guaranty of unanimity which the customary "so say you all" after repeating the verdict provides. The transcript indicates that the clerk did make this inquiry after the foreman had recited the verdicts upon the three counts of the information, but it does not indicate any response by the jurors. Although the jurors may have silently indicated an affirmative answer to this question which was not recorded by the court stenographer, we do not rely on this possible construction of the transcript. See *State* v. *Mosca*, 90 Conn. 381, 385, 97 A. 340 (1916). "[I]t is to be presumed that the jury assent to a verdict rendered in their presence and hearing." *Raymond* v. *Bell*, supra, 90. We have refused to find a verdict defective where no such inquiry was even made so long as the other jurors were present in the courtroom when the foreman announced the verdict. *State* v. *Avcollie*, supra, 105; *Raymond* v. *Bell*, supra, 86–87. We conclude that the absence in the transcript of any express assent by the other jurors to the verdict as announced by the foreman is not a defect of such magnitude as to invalidate it.

the afternoon in question, the defendant and other adult relatives of Louise were in the apartment when a squabble broke out between Jonathan and another child. Although the exact sequence of events is unclear, a brief scuffle then ensued in which the defendant allegedly pushed Jonathan into a wall and then to the floor. Jonathan's mother had not yet left for work and, upon hearing noise of a disturbance, went to the defendant's apartment and retrieved her son. The child had sustained a bloody nose, a split lip, a lump on his head, facial bruises, and red marks on his arm. A later hospital examination revealed welts and scratches on the child's chest and back.

The trial court set aside the verdict on the risk of injury count because it viewed this conclusion of guilt as inconsistent with the jury's finding of not guilty on the charge of assault in the third degree. Its ruling was also based upon the insufficiency of the evidence to support the guilty finding.

"Consistency in the verdict is not necessary." *Dunn* v. *United States*, 284 U.S. 390, 393, 52 S. Ct. 189, 76 L. Ed. 356 (1932). Our cases are in accord with this principle which has been accepted by most jurisdictions. *State* v. *Rosado*, 178 Conn. 704, 708–709, 425 A.2d 108 (1979); *State* v. *Manning*, 162 Conn. 112, 122, 291 A.2d 750 (1971); see annot., 18 A.L.R.3d 259; 16 A.L.R.3d 866. It continues to be reaffirmed by the United States Supreme Court. *Hamling* v. *United States*, 418 U.S. 87, 101, 94 S. Ct. 2887, 41 L. Ed. 2d 590 (1974); *United States* v. *Dotterweich*, 320 U.S. 277, 279, 64 S. Ct. 134, 88 L. Ed. 48, reh. denied, 320 U.S. 815, 64 S. Ct. 367, 88 L. Ed. 492 (1943).

In *State* v. *Rosado,* supra, we recognized the inconsistency between a guilty verdict upon a count of sale of a narcotic substance, where the information alleged that the defendant had personally handed the narcotic to the informant, and a verdict of not guilty on a count of possessing the narcotic based upon the same incident. We concluded that the many possible explanations for the acquittal on one charge did not necessarily indicate that the jury had acted improperly in convicting the defendant on the other. Id., 709.

The trial court erred to the extent that it relied upon inconsistency as a ground for setting aside the verdict of guilty on the risk of injury charge.[2]

The trial court also erred in concluding that there was insufficient evidence to support the verdict. The crime of risk of injury in this case required proof beyond a reasonable doubt of the following elements: (1) that the victim was less

---

[2] We also note that there is no inconsistency between the acquittal on the third degree assault charge and the conviction of risk of injury. A specific intention to cause physical injury is an essential element of the crime of assault in the third degree in violation of General Statutes § 53a-61 (a) (1), as the jury were instructed. General Statutes § 53a-61 provides as follows: "ASSAULT IN THE THIRD DEGREE: CLASS A MISDEMEANOR. (a) A person is guilty of assault in the third degree when: (1) With intent to cause physical injury to another person, he causes such injury to such person or to a third person; or (2) he recklessly causes serious physical injury to another person; or (3) with criminal negligence, he causes physical injury to another person by means of a deadly weapon or a dangerous instrument." The substituted information alleged the commission of the crime of "Assault 3d . . . in violation of General Statutes No. 53a-61" but did not specify which of these subsections was relied upon. In the charge the trial court limited the jury to consideration of subsection (1) of § 53a-61. The crime of risk of injury to a minor child in violation of General Statutes § 53-21 requires no such intent. *State* v. *Dennis,* 150 Conn. 245, 251, 188 A.2d 65 (1963).

than sixteen years old; (2) that the defendant had perpetrated an act upon the victim; (3) that this act was likely to be injurious to his health; and (4) that the defendant had a general criminal intent to perform such act. See General Statutes § 53-21; *State* v. *Pickering,* 180 Conn. 54, 64, 428 A.2d 322 (1980). In reviewing the sufficiency of the evidence supporting a jury verdict, this court must construe that evidence in the most favorable manner reasonably possible to support the jury verdict. *Josephson* v. *Meyers,* 180 Conn. 302, 313, 429 A.2d 877 (1980); *State* v. *Avcollie,* 178 Conn. 450, 461, 423 A.2d 118 (1979), cert. denied, 444 U.S. 1015, 100 S. Ct. 667, 62 L. Ed. 2d 645 (1980); *State* v. *Rossier,* 175 Conn. 204, 207, 397 A.2d 110 (1978).

From the evidence presented the jury could have reasonably found beyond a reasonable doubt the following facts: The child, Jonathan, was five years old when the incident occurred. On the day in question Jonathan and the defendant were both in the apartment of Louise Evon. The defendant had recently returned from picking up a paycheck from a job which he had recently lost. Jonathan had been squabbling with another child and was crying. The defendant, believing Jonathan was misbehaving, grabbed the child by the arm and pushed him face first into the kitchen wall. Then the defendant threw the child down onto the floor in the adjoining room. Louise attempted to stop the defendant. As the result of these actions the child sustained superficial injuries to his face, head and arm. Shortly after the incident the defendant gave two conflicting descriptions of the incident to the investigating police officer, one admitting he had thrown the child and the other blaming Louise for the child's injuries.

Testimony controverting this version of the incident was provided by the defendant, Louise Evon and her adult relatives present in the apartment at the time. The resolution of conflicting testimony, however, "is properly within the province of the jury who determine the credibility of the witnesses and the weight to be accorded to their testimony." *Kubeck* v. *Foremost Foods Co.,* 179 Conn. 486, 487, 427 A.2d 391 (1980); see *State* v. *Spates,* 176 Conn. 227, 238, 405 A.2d 656 (1978); *DeLuca* v. *C. W. Blakeslee & Sons, Inc.,* 174 Conn. 535, 547, 391 A.2d 170 (1978); *Dulski* v. *Appel,* 172 Conn. 187, 192, 374 A.2d 177 (1976).

We find that as a matter of law the jury had a reasonable basis for concluding that the defendant was guilty of risk of injury. The court set aside the verdict erroneously.

As an alternative ground for sustaining the judgment of acquittal for insufficiency of the evidence, the defendant argues that the testimony of the child-complainant, Jonathan, should be stricken as incompetent. The defendant maintains that although the trial court has wide discretion in competency determinations, the court failed to follow *State* v. *Rodriguez,* 180 Conn. 382, 429 A.2d 919 (1980), which requires a court to inquire whether a proposed witness possesses an "ability to recollect and narrate intelligently." Id., 389; *State* v. *Siberon,* 166 Conn. 455, 457, 352 A.2d 285 (1974); and an "intelligent comprehension of the facts sought to be developed." *State* v. *Rodriguez,* supra, 389; *State* v. *Segerberg,* 131 Conn. 546, 548, 41 A.2d 101 (1945). After reviewing the transcripts of the preliminary hearing and the trial testimony of Jonathan, we do not find that the court abused its discretion in admitting the child's testimony.

See *State* v. *Rodriguez,* supra, 389. During the competency hearing the trial court did not permit either counsel to elicit a complete narrative of the incident from the child, ruling that the child had sufficiently demonstrated his intelligent recollection of the incident by describing the persons present, the individual who hit him and some of the surrounding circumstances. The child's trial testimony demonstrated an ability to narrate the crucial elements of the incident consistently and intelligently, although his memory of the actions of persons other than the defendant during the incident and of events immediately following is somewhat vague and limited. Such shortcomings, however, are not unusual in the testimony of victims of a traumatic experience and are properly considered as going to the weight of the testimony rather than its admissibility.

The defendant has advanced an additional reason for affirming the action of the trial court in setting aside the verdict on the risk of injury count. He claims that the trial court erred in failing to instruct the jury properly on the element of the general criminal intent required for a conviction. The trial court rejected this ground when it was first urged by the defendant in support of his motion to set aside.

The defendant testified, in effect, that if he had caused any injury to the complainant it was wholly accidental. His version of the incident was that when he returned home he observed Jonathan crying in the kitchen. He took the child by the arm with one hand and by the shoulder with his other hand and marched him into the living room, the child being directly in front of him. As he got about four feet into the living room from the

kitchen doorway, someone grabbed him from behind. He spun around, his plastic kneecap locked and he fell on top of Louise, who was behind him. He did not know whether he had touched Jonathan as he fell on top of Louise, but he admitted that his reflex action in swinging out his arms to prevent his fall might have caused the child to be pushed against a table. His testimony was substantially corroborated by that of Shirley Hammick, Louise Evon and Lorraine Evon.

The trial court charged the jury that "a person who does any act likely to impair the health of a child under the age of sixteen is guilty of the crime of risk of injury." Essentially the same instruction was twice repeated later in the charge. The jurors were advised that no specific intent had to be shown for this crime, unlike assault in the third degree for which a person must intend to cause physical injury and unlike interference with a police officer for which intentional interference is necessary.

The charge continued: "You will recall that the allegations of the State here are that the accused threw the child against the wall and then onto a floor in a room. If, in fact, that was done and you so find and that the alleged bruises or bruise on the head, cut lip, bloody nose and bruises and welts on the body did, in fact, take place, or any combination of these, this is such conduct on the basis of which a jury could appropriately base a conclusion that the health of the child was likely to be impaired, particularly if you take into account the fact that the child was in custody of the household of which the defendant was a member. Health as used in this statute means the state of being hale, sound or whole in body and mind, the state of

physical well-being; likely, of course, means in all probability or possibly; to impair means to make worse or to diminish in quality or value, to weaken or deteriorate. To repeat, a person who does any act likely to impair the health of a child under the age of sixteen is guilty of the crime of risk of injury as it applies to this case. I'm going to have a further word to say about the crime of risk of injury in a moment after I've defined for you the crime of assault in the third degree."

The defendant took exception only to the risk of injury portion of the charge, claiming that the element of general criminal intent was inadequately defined, especially in view of the testimony that any injury to the child had occurred accidentally. He sought a further instruction that one element of risk of injury is that the offender must have "a general intent or knowledge that he's doing an act that is going to likely impair the morals[3] of a minor."

Two general types of behavior likely to harm children are proscribed by our risk of injury statute, § 53-21: "(1) deliberate indifference to, acquiescence in, or the creation of situations inimical to the minor's moral or physical welfare . . . ; and (2) acts directly perpetrated on the person of the minor and injurious to his moral or physical well-being." *State* v. *Dennis,* 150 Conn. 245, 250, 188 A.2d 65 (1963). Under the evidence presented, the court properly limited the jury to consideration of only the second of these classifications. "Specific intent is not an element of the crime defined in the second

---

[3] This reference of counsel to impairment of the "morals" of the child was obviously erroneous. Under the instructions to the jury, as well as the evidence, the issue of impairment was limited to the physical health of the child.

part of § 53-21." Id., 251. A general intent to do the proscribed act is required, however, as it is ordinarily for crimes of commission rather than omission. *State* v. *Bitting,* 162 Conn. 1, 5, 291 A.2d 240 (1971); see *State* v. *Tedesco,* 175 Conn. 279, 288–89, 397 A.2d 1352 (1978); *State* v. *Penn,* 144 Conn. 148, 154, 127 A.2d 833 (1956); *State* v. *Hayes,* 127 Conn. 543, 584–85, 18 A.2d 895 (1941). We need not on this occasion define fully what is encompassed by "intent to do the proscribed act" in the context of § 53-21. The culpable mental state in any event would not include the involuntary reflex action which the defendant claimed to have occurred.

"To some extent . . . all crimes of affirmative action require something in the way of a mental element—at least an intention to make the bodily movement which constitutes the act which the crime requires . . . ." LaFave & Scott, Criminal Law (1972) § 28, p. 201; see *State* v. *Truppi,* 182 Conn. 449, 453–54 nn.2–3, 438 A.2d 713 (1980), cert. denied, 451 U.S. 941, 101 S. Ct. 2024, 68 L. Ed. 2d 329 (1981); Model Penal Code § 201 (1) (2); 22 C.J.S., Criminal Law § 29, p. 99.

The defense of accident raised by the defendant clearly presented the issue of whether his act, which may have caused the child to be injured, was an intended bodily movement likely to injure him. The failure of the court even to allude to this defense as one which the state had to disprove was a serious deficiency in the charge. If the jury took literally the unqualified instruction that a person is guilty of risk of injury who does any act likely to impair the health of a child, they may well have viewed the evidence supporting this defense as of no consequence.

The failure to mention the basic claim of accident made by the defendant was not cured by the reference in the charge to "acts of such a nature that a general criminal intent could be inferred . . . ." This statement was followed by pointing out that if the jury found that the defendant "threw the child against the wall and then onto a floor in a room" such conduct would appropriately support a conclusion that the statute had been violated. Although the use of the word "threw" may imply a voluntary act, it is also susceptible of the interpretation that even if the reflex action of the defendant's arm had caused the child to be thrown and to be injured, as the defendant and his witnesses testified, the crime would be sufficiently established. In excepting to the charge the defendant adequately pointed out the flaw in the instructions given to the jury and a curative instruction should have been given discussing the general intent requirement in the context of the defense of accident which had been raised.

The defendant makes a further contention that a finding of error in the charge necessitates a remand for acquittal rather than for a new trial because of the prohibition against double jeopardy. We have previously held that, where a jury verdict has been erroneously set aside for insufficient evidence and the trial court has acquitted the defendant, as occurred here, our reinstatement of the verdict on appeal does not offend that constitutional principle. *State* v. *Avcollie,* 174 Conn. 100, 107, 384 A.2d 315 (1977); *State* v. *Avcollie,* 178 Conn. 450, 453, 423 A.2d 118 (1979), cert. denied, 444 U.S. 1015, 100 S. Ct. 667, 62 L. Ed. 2d 645 (1980). In *Avcollie* the defendant did not raise any claims of error com-

mitted during the trial of the case until after it had been remanded to the trial court for judgment on the verdict and another appeal was taken. See *State v. Avcollie,* 188 Conn. 626, 453 A.2d 418 (1982). In the case before us the defendant has elected to compress the two-step procedure followed in *Avcollie* into one proceeding on appeal by raising as an additional ground to sustain the trial court in setting aside the verdict its claim of error in the charge, which had also been advanced in the trial court. Since the defendant could hardly have claimed double jeopardy if the trial court had set aside the verdict as he requested and ordered a new trial on this ground; see *United States* v. *Scott,* 437 U.S. 82, 93, 98 S. Ct. 2187, 57 L. Ed. 2d 65, reh. denied, 439 U.S. 883, 99 S. Ct. 226, 58 L. Ed. 2d 197 (1978); *United States* v. *Tateo,* 377 U.S. 463, 467, 84 S. Ct. 1587, 12 L. Ed. 2d 488 (1964); we see no stronger basis for such a claim simply because our review has brought about the desired result.

The trial court did not err in setting aside the verdict, since such action was required because of error in the charge. There is error, however, in the rendition of a judgment of acquittal; that judgment is vacated and a new trial is ordered.

In this opinion the other judges concurred.