STATE OF CONNECTICUT *v.* GARY J. TRICARICO
(AC 29939)

Bishop, Beach and Borden, Js.

Argued February 1—officially released May 11, 2010

*Deborah G. Stevenson*, special public defender, for the appellant (defendant).

*Lisa A. Riggione*, senior assistant state's attorney, with whom, on the brief, were *Scott J. Murphy*, state's attorney, and *Kevin J. Murphy*, senior assistant state's attorney, for the appellee (state).

*Opinion*

BISHOP, J. The defendant, Gary J. Tricarico, appeals from the judgment of conviction, rendered after a jury trial, of risk of injury to a child in violation of General Statutes § 53-21 (a) (1). On appeal, the defendant claims that (1) various alleged improprieties on the part of the

prosecutor deprived him of a fair trial, (2) the trial court improperly admitted certain constancy of accusation testimony, (3) the court improperly denied his motion for acquittal and (4) the court improperly denied his motion for a mistrial. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The defendant was a friend of the parents of Kellie.[1] Beginning in February or March, 2006, the parents allowed the defendant to stay in their house, where he slept on the couch. The defendant was approximately thirty-eight years old at the time and got along very well with Kellie, who was eight years old at the time. On April 22, 2006, the parents ordered the defendant to leave their home after Kellie told them that he had touched her "private part" and French kissed her on one occasion. The parents did not report the incident to the police until one week later, on April 30, 2006, because they "[did not] know where to go with it," and they were afraid that the department of children and families would take their children. The defendant told the police that he had "stuck his tongue in [Kellie's] mouth" but that he did so "in order to teach her a lesson to not just kiss people . . . ."

The defendant was charged with sexual assault in the first degree in violation of General Statutes § 53a-70, risk of injury to a child in violation of General Statutes (Rev. to 2005) § 53-21 (a) (2) for allegedly touching Kellie's private parts and risk of injury to a child in violation of § 53-21 (a) (1) for allegedly French kissing Kellie. The state withdrew the sexual assault charge, and the jury found the defendant not guilty of the risk of injury charge relating to the allegations that he had

---

[1] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse and the crime of risk of injury to a child, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

touched Kellie's private parts. The jury found the defendant guilty of risk of injury in violation of § 53-21 (a) (1) for French kissing Kellie. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that he was denied a fair trial as a result of various improprieties on the part of the prosecutor. We are not persuaded.

"In analyzing claims of prosecutorial impropriety, we engage in a two step process. . . . First, we must determine whether any impropriety in fact occurred; second, we must examine whether that impropriety, or the cumulative effect of multiple improprieties, deprived the defendant of his due process right to a fair trial. . . . To determine whether the defendant was deprived of his due process right to a fair trial, we must determine whether the sum total of [the prosecutor's] improprieties rendered the defendant's [trial] fundamentally unfair, in violation of his right to due process. . . . The question of whether the defendant has been prejudiced by prosecutorial [impropriety], therefore, depends on whether there is a reasonable likelihood that the jury's verdict would have been different absent the sum total of the improprieties." (Internal quotation marks omitted.) *State* v. *Moore*, 293 Conn. 781, 808, 981 A.2d 1030 (2009).

The defendant's claims of prosecutorial impropriety appear to be that the prosecutor improperly aroused the emotions of the jury in eliciting testimony that the defendant had engaged in prior uncharged misconduct and that the prosecutor improperly bolstered the credibility of a detective witness. The defendant also claims that the prosecutor, during closing argument, improperly bolstered the credibility of his witnesses and appealed to the emotions of the jury. The defendant contends that the cumulative effect of the alleged

improprieties deprived him of a fair trial. At trial, however, the defendant admitted to putting his tongue in Kellie's mouth, leaving the state only to satisfy the jury that the act constituted a risk of injury to the child's physical or moral well-being. Because the only offense that implicated the credibility of the state's witnesses was the alleged intimate touching, and the defendant was acquitted of that charge, it is difficult to perceive how the prosecutor's alleged improprieties, if they occurred, could have had any effect on the trial's outcome. In short, because the defendant's conviction did not stem from any of the alleged improprieties, we need not analyze them in detail, and his claims in this regard fail.

## II

The defendant also claims that the court improperly admitted certain constancy of accusation testimony. Specifically, the defendant contends that the court improperly admitted the testimony of Kellie's father for the purpose of constancy of accusation before Kellie testified and that the court should have instructed the jury regarding constancy of accusation as to the father's testimony. The defendant concedes that he did not preserve this claim at trial but seeks to prevail under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989).[2] The defendant's claim fails under the second prong of *Golding* because it is well settled that a claim that the court improperly admitted constancy of accusation testimony is not constitutional in nature. See *State* v. *Samuels*,

---

[2] Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." *State* v. *Golding*, supra, 213 Conn. 239–40.

273 Conn. 541, 871 A.2d 1005 (2005); *State* v. *Troupe*, 237 Conn. 284, 677 A.2d 917 (1996).[3]

## III

The defendant next claims that the court improperly denied his motion for acquittal because his conviction was based on insufficient evidence. Although the defendant concedes that there was evidence that he had French kissed Kellie, he argues that the state failed to prove that (1) he acted wilfully or unlawfully and (2) the act was likely to impair the morals of Kellie. We are unpersuaded.[4]

"In reviewing the sufficiency of the evidence to support a criminal conviction we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Jason B.*, 111 Conn. App. 359, 363, 958 A.2d 1266 (2008), cert. denied, 290 Conn. 904, 962 A.2d 794 (2009).

"It is within the province of the jury to draw reasonable and logical inferences from the facts proven. . . . The jury may draw reasonable inferences based on other inferences drawn from the evidence presented.

---

[3] The defendant also seeks review under the plain error doctrine. See Practice Book § 60-5. Because we do not believe that the defendant's claim constitutes a manifest injustice, we decline to afford such extraordinary review.

[4] The defendant also claims that the court used an improper standard of review in denying his motion for acquittal. He bases his claim on the court's reference to "some" evidence versus "sufficient" evidence. Because the court's reference to "some" evidence was singular, and because the court indicated that it would order a judgment of acquittal for any offense charged if the evidence did not reasonably permit a finding of guilty, the standard set forth in Practice Book § 42-40, this claim is without merit.

. . . Our review is a fact based inquiry limited to determining whether the inferences drawn by the jury are so unreasonable as to be unjustifiable." (Internal quotation marks omitted.) *State* v. *Smith*, 110 Conn. App. 70, 75, 954 A.2d 202, cert. denied, 289 Conn. 954, 961 A.2d 422 (2008).

Section 53-21 (a) (1) makes it a crime for any person "wilfully or unlawfully [to cause] or [to permit] any child under the age of sixteen years to be placed in such a situation that the life or limb of such child is endangered, the health of such child is likely to be injured or the morals of such child are likely to be impaired, or [*to do*] *any act likely to impair the health or morals of any such child* . . . ." (Emphasis added.) As to the wilful aspect of this statute, the record reveals that the evidence was plain that the defendant intentionally placed his tongue inside the child's mouth. Because this aspect of the risk of injury statute requires only the general intent to commit the act and not a specific intent to bring about its consequences, this aspect of the statute was well satisfied by the defendant's own admissions. See *State* v. *Martin*, 189 Conn. 1, 12–13, 454 A.2d 256, cert. denied, 461 U.S. 933, 103 S. Ct. 2098, 77 L. Ed. 2d 306 (1983).

In his appellate brief, the defendant cites to the evidence of his actions. Kellie testified: "He was trying to kiss me and touching me"; "[H]e tried to kiss me, and he was touching me at the private part"; "He was teaching me how to kiss like a regular way"; and, "He was touching me tongue to tongue." The police detective testified that "[the defendant] had informed me that the victim in this particular case had continued kissing him. So, in order to teach her a lesson to not just kiss people, he, upon kissing her, stuck his tongue in her mouth and she withdrew very quickly." He stated that the defendant explained that his purpose in putting his

tongue in Kellie's mouth was "[t]o teach her a lesson not to kiss people."

The defendant contends that the state did not proffer sufficient evidence to establish that he acted illegally or in a manner likely to impair Kellie's morals because he stuck his tongue into her mouth in order to teach her not to just go around kissing people. Because the jury reasonably could have inferred from the evidence that the act of an adult man placing his tongue into the mouth of an eight year old girl was likely to have impaired her morals, we reject the defendant's claim.

## IV

The defendant finally claims that the court improperly denied his motion for a mistrial. He asserts that the prosecutor's use of props during his rebuttal argument, namely, a teddy bear and a McDonald's cup, improperly aroused the emotions of the jury and that the court's curative instruction was insufficient to remedy the resulting harm. We are unpersuaded.

During his rebuttal argument, the prosecutor displayed and briefly referred to a medium sized McDonald's cup[5] and a teddy bear.[6] Following argument, the court asked the prosecutor if he had shown those props to defense counsel prior to displaying them to the jury. The prosecutor indicated that he had not and did not think that he was required to because they were merely demonstrative tools that he employed to support his argument that the parents were "simple" and "hardworking" and to remind the jury that Kellie was eight years old. After the court raised this issue, the defendant orally moved for a mistrial. The court denied the defendant's motion, stating that irreparable damage had not

[5] There was evidence that Kellie's mother worked at a McDonald's restaurant.

[6] While testifying, Kellie had held a stuffed animal in her lap, without objection by the defendant.

been done and that it believed that the situation could be remedied with a curative instruction. The court instructed the jury as follows: "During the summation of the assistant state's attorney, certain, what I would characterize as props, were displayed to you. They are not evidence and were never admitted into evidence, and, therefore, are not to be considered by you in any way in your consideration of the facts or in your deliberations. You must base your verdict on the evidence presented and the law as instructed, and not on the basis of any emotions or sympathy."

"The standard for review of an action upon a motion for a mistrial is well established. While the remedy of a mistrial is permitted under the rules of practice, it is not favored. [A] mistrial should be granted only as a result of some occurrence upon the trial of such a character that it is apparent to the court that because of it a party cannot have a fair trial . . . and the whole proceedings are vitiated. . . . If curative action can obviate the prejudice, the drastic remedy of a mistrial should be avoided. . . . On appeal, we hesitate to disturb a decision not to declare a mistrial. The trial judge is the arbiter of the many circumstances which may arise during the trial in which his function is to assure a fair and just outcome. . . . The trial court is better positioned than we are to evaluate in the first instance whether a certain occurrence is prejudicial to the defendant and, if so, what remedy is necessary to cure that prejudice. . . . The decision whether to grant a mistrial is within the sound discretion of the trial court." (Internal quotation marks omitted.) *State* v. *Ortiz*, 280 Conn. 686, 702, 911 A.2d 1055 (2006); see also Practice Book § 42-43.[7]

---

[7] Pursuant to Practice Book § 42-43, "[u]pon motion of a defendant, the judicial authority may declare a mistrial at any time during the trial if there occurs during the trial an error or legal defect in the proceedings, or any conduct inside or outside the courtroom which results in substantial and irreparable prejudice to the defendant's case. . . ."

Our Supreme Court has stated: "Of course, counsel must refrain from injecting into closing argument extraneous matters unsupported by the record, and counsel's use, during closing argument, of props that are not in evidence creates a risk of diverting the jury's attention to facts or issues not properly before it. Nevertheless, counsel is entitled to considerable leeway in deciding how best to highlight or to underscore the facts, and the reasonable inferences to be drawn therefrom, for which there is adequate support in the record. We therefore never have categorically barred counsel's use of such rhetorical devices, be they linguistic or in the form of visual aids, as long as there is no reasonable likelihood that the particular device employed will confuse the jury or otherwise prejudice the opposing party. Indeed, to our knowledge, no court has erected a per se bar to the use of visual aids by counsel during closing arguments. On the contrary, the use of such aids is a matter entrusted to the sound discretion of the trial court." *State* v. *Ancona*, 270 Conn. 568, 597–98, 854 A.2d 718 (2004), cert. denied, 543 U.S. 1055, 125 S. Ct. 921, 160 L. Ed. 2d 780 (2005).

Here, the prosecutor used the props briefly only during his rebuttal argument. The defendant conceded that the use of props during argument is not, in itself, improper but contends that he and the court should have been notified prior to their use before the jury. Although we agree that it is good practice to seek the court's permission and to notify opposing counsel of one's intention to use props during argument, there is no rule requiring such notification. Furthermore, the prosecutor's reference to the McDonald's cup to remind the jury that if Kellie's parents were "rocket scientists," they may have promptly reported Kellie's accusations, was likely more offensive to the jury than it was prejudicial to the defendant, and the teddy bear, although not in evidence, was used to remind the jury that Kellie

was a child. Due to the fact that the age of the victim is an element of the offense of risk of injury, and because Kellie had testified while holding a similar stuffed animal, the prosecutor's use of that prop was not likely to have confused the jurors or to have aroused their sympathies. Because, under the circumstances of this case, there was nothing overly prejudicial or unduly distracting about the props, we do not believe that their use necessarily was improper. Accordingly, the court properly denied the defendant's motion for a mistrial.

The judgment is affirmed.

In this opinion the other judges concurred.