STATE OF CONNECTICUT *v.* JOSEPH JAMES
(AC 19910)

Dranginis, Flynn and O'Connell, Js.

Argued April 2—officially released July 24, 2001

*Marjorie Allen Dauster*, assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Victor Carlucci, Jr.*, assistant state's attorney, for the appellant (state).

*Nicholas P. Cardwell*, with whom, on the brief, was *Matthew J. Costello*, for the appellee (defendant).

*Opinion*

O'CONNELL, J. The genesis of this case was the prosecution of the defendant on five drug charges.[1] The trial court granted the defendant's motion to suppress his voluntary statement and evidence of a shipping receipt, which decision led to a dismissal of the charges. Pursuant to General Statutes § 54-96,[2] the state requested permission to appeal, which the court denied. The state now appeals from that denial, as well as from the granting of the motion to suppress. We dismiss the appeal.

The following facts and procedural history are relevant to our disposition of this appeal. Federal Express informed West Hartford police that, using drug-sniffing dogs, they had detected marijuana in two boxes addressed to the Har-Conn Chrome Company in West Hartford. West Hartford police opened the boxes at the Federal Express office, in the presence of the manager, and found a blue igloo cooler in each box. Further

---

[1] The defendant was charged with (1) criminal attempt to possess four ounces or more of marijuana in violation of General Statutes §§ 53a-49 (a) (2) and 21a-279 (b), (2) possession of four ounces or more of marijuana in violation of General Statutes § 21a-279 (b), (3) conspiracy to transport with intent to sell one kilogram or more of marijuana in violation of General Statutes §§ 53a-48 (a) and 21a-278 (b), (4) criminal attempt to possess with intent to sell one kilogram or more of marijuana in violation of § 53a-49 (a) (2) and 21a-278 (b), and (5) possession with intent to sell one kilogram or more of marijuana in violation of § 21a-278 (b).

[2] General Statutes § 54-96 provides: "Appeals from the rulings and decisions of the Superior Court, upon all questions of law arising on the trial of criminal cases, may be taken by the state, with the permission of the presiding judge, to the Supreme Court or to the Appellate Court, in the same manner and to the same effect as if made by the accused."

inspection and testing confirmed that the coolers contained approximately forty pounds of marijuana. The police removed most of the marijuana from one of the boxes, replaced it with sand and weights and resealed the box.

Officer Paul Melanson, posing as a Federal Express driver and wearing an undercover wire monitored by a surveillance unit, went to the office of the Har-Conn Chrome Company with the box containing the substituted contents. At the receiving area, he was met by a clerk, John Chen, who signed for the delivery. Melanson remained in the area and observed Chen open the box, look into it and remark to a person standing nearby that the package was "Joe's."[3] He then observed Chen go to the public address system and page "Joe." In an effort to remain inconspicuous, Melanson walked out of the building and then back in through another door to the receiving area. When he reentered, the box was gone. Attempting to follow the box to its ultimate recipient, Melanson approached Chen and told him that he had signed in the wrong place and that he needed to scan the package again.

At that point, the defendant entered the receiving area, and Chen pointed to him and indicated that the box was the defendant's. The defendant complained to Melanson that there should have been two boxes delivered to him, and Melanson replied that he had only one box to deliver. The defendant left the building and walked down the driveway. Melanson, using the surveillance wire, informed the surveillance team that the person walking down the driveway was the man who had received the box. The surveillance team, positioned outside the building, approached the defendant,

---

[3] Chen identified the package as belonging to "Joe" by an American flag that he saw upon opening the box. There is no evidence that Chen opened the igloo cooler.

ordered him to the ground at gunpoint, handcuffed him and patted him down. During the search of the defendant, the officers found a Federal Express shipping receipt in his possession.

The officers obtained consent to search the building from the company vice president and located the package under a work booth in the factory area. No evidence was introduced to connect the defendant with that area. Melanson never saw the defendant in possession of the box, but he asked Chen who had taken the box from the receiving area, and Chen responded that it was "Joe." The defendant was taken to the West Hartford police department where he gave a voluntary statement inculpating himself.

The court granted the defendant's motion to suppress evidence of the shipping receipt and his written statement, and subsequently dismissed all counts. This was followed by the state's motion for permission to appeal, which was denied. The state argues that the court abused its discretion in denying its request for permission to appeal. We are not persuaded.

The state contends that the court's denial of permission to appeal constitutes an abuse of discretion if the state demonstrates that another court could resolve the issue in a different manner. *Lozada* v. *Deeds*, 498 U.S. 430, 432, 111 S. Ct. 860, 112 L. Ed. 2d 956 (1991). We do not agree. The state's reliance on *Seebeck* v. *State*, 246 Conn. 514, 534, 717 A.2d 1161 (1998), and *Simms* v. *Warden*, 230 Conn. 608, 616, 646 A.2d 126 (1994), to support this position is misplaced. Neither case involves § 54-96, which is the statute at issue here. *Seebeck* implicates General Statutes § 54-95 (a) and concerned the review of a denial of a request for certification to appeal from the denial of a petition for a new trial, and *Simms* concerns General Statutes § 52-470 (b) and involved the review of a denial of a petition for certification to appeal

from the dismissal of a habeas corpus petition. Both statutes are designed to provide a defendant with a statutory right to appeal, while § 54-96 concerns the *state's* right to appeal. The state has not cited, nor are we aware of, any cases that apply the test set forth in *Lozada* to cases involving § 54-96. In fact, in reviewing an appeal under § 54-96, our Supreme Court has held the exact opposite of the state's position by stating that "the question of determining whether a trial court has abused its discretion does not depend upon whether a reviewing court would have reached the same conclusion." *State* v. *S & R Sanitation Services, Inc.*, 202 Conn. 300, 311–12, 521 A.2d 1017 (1987).

It is well settled that "[t]he right to an appeal is not a constitutional one. . . . The right of the state to appeal in criminal cases is granted only by statute." (Citation omitted; internal quotation marks omitted.) *State* v. *McMillan*, 51 Conn. App. 676, 679–80, 725 A.2d 342, cert. denied, 248 Conn. 911, 732 A.2d 179 (1999). Section 54-96 provides limited authority for appeal by the state.[1] "In cases arising under § 54-96, we have inquired, on appeal, whether the record demonstrates that the denial of permission to the state to appeal constituted a clear and extreme abuse of discretion or resulted in an apparent injustice." *Simms* v. *Warden*, supra, 230 Conn. 615. "In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling . . . [and] [r]eversal is required only where an abuse of discretion is manifest or where injustice appears to have been done." (Internal quotation marks omitted.) *Walker* v. *Commissioner of Correction*, 223 Conn. 411, 414, 611 A.2d 413 (1992), overruled in part on other grounds, *Simms* v. *Warden*, 229 Conn. 178, 185–86 n.12, 640 A.2d 601 (1994).

[1] See footnote 3.

"The court's granting or denial of the state's motion to appeal constitutes a 'judicial determination' within the court's discretion. . . . Ordinarily this court will not review rulings made in the exercise of a court's discretion. . . . In those cases of manifest abuse, however, where injustice appears to have been done, this court will grant review to determine whether the court's exercise is 'so unreasonable as to constitute an abuse of discretion.' . . . Section 54-96 does not, therefore, preclude an appeal by the state seeking review of the court's denial of permission to appeal in those unusual cases in which . . . the court's denial was so arbitrary as to constitute an extreme abuse of discretion rendering the denial ineffective." (Citations omitted.) *State* v. *Avcollie*, 174 Conn. 100, 110, 384 A.2d 315 (1977). The issue before us, therefore, is whether such a clear, arbitrary and extreme abuse of discretion is evident so that it is apparent that an injustice has been done.

When asked why it had denied permission to appeal, the court replied that there had been a full evidentiary hearing on the suppression motion, at which the state offered witnesses and argument followed by motions for articulation and reargument. The court's function was to find facts and to apply the law to those facts, a function that the court properly performed. We cannot overturn the court's fact-finding if there is a sufficient basis in the evidence. See *American Heritage Agency, Inc.* v. *Gelinas*, 62 Conn. App. 711, 717, 774 A.2d 220, cert. denied, 257 Conn. 903, 777 A.2d 192 (2001). The record discloses that there was a sufficient basis in the evidence to support the court's finding on the suppression motion. Accordingly, when a trial court has made a ruling based on the evidence, the denial of permission to appeal is within its discretion. The record here does not disclose such clear, arbitrary and extreme abuse of discretion that we can conclude that an injustice appears to have been done.

The trial court did not abuse its discretion in denying the state's motion for permission to appeal under § 54-96. Because that permission is crucial under the statute for an appeal to be viable and, a fortiori, for our subject matter jurisdiction, we have no such jurisdiction under the circumstances of this case. This requires that we dismiss the appeal.

The appeal is dismissed.

In this opinion the other judges concurred.