## STATE OF CONNECTICUT *v.* JOSEPH ALEXANDER JAMES
### (SC 16591)

Borden, Norcott, Palmer, Vertefeuille and Zarella, Js.

Argued May 20—officially released August 13, 2002

*Marjorie Allen Dauster*, senior assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Victor Carlucci, Jr.*, assistant state's attorney, for the appellant (state).

*Nicholas P. Cardwell*, with whom, on the brief, was *Matthew J. Costello*, for the appellee (defendant).

*Opinion*

NORCOTT, J. Following our grant of certification, the state appeals from the Appellate Court's dismissal of its appeal for lack of subject matter jurisdiction. The state claims that the Appellate Court improperly: (1) refused to incorporate the inquiry of *Lozada* v. *Deeds*, 498 U.S. 430, 432, 111 S. Ct. 860, 112 L. Ed. 2d 956 (1991), into the abuse of discretion standard for review of denials of state requests for permission to appeal pursuant to General Statutes § 54-96;[1] and (2) dismissed the state's appeal. The state also requests that this court exercise its general supervisory power and review its claim that the trial court improperly concluded that the police lacked probable cause to arrest the defendant. We reverse the judgment of the Appellate Court.

The defendant, Joseph Alexander James, was charged with criminal attempt to possess four ounces or more of marijuana in violation of General Statutes §§ 53a-49 (a) (2)[2] and 21a-279 (b),[3] possession of four

[1] General Statutes § 54-96 provides: "Appeals from the rulings and decisions of the Superior Court, upon all questions of law arising on the trial of criminal cases, may be taken by the state, with the permission of the presiding judge, to the Supreme Court or to the Appellate Court, in the same manner and to the same effect as if made by the accused."

[2] General Statutes § 53a-49 (a) provides in relevant part: "A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime, he . . . (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime."

[3] General Statutes § 21a-279 (b) provides in relevant part: "Any person who possesses or has under his control . . . four ounces or more of a cannabis-type substance, except as authorized in this chapter, for a first offense, may be imprisoned not more than five years or be fined not more than two thousand dollars or be both fined and imprisoned, and for a subsequent offense may be imprisoned not more than ten years or be fined not more than five thousand dollars or be both fined and imprisoned."

ounces or more of marijuana in violation of General Statutes § 21a-279 (b), conspiracy to transport with intent to sell one kilogram or more of marijuana in violation of General Statutes §§ 53a-48 (a)[4] and 21a-278 (b),[5] criminal attempt to possess with intent to sell one kilogram or more of marijuana in violation of §§ 53a-49 (a) (2) and 21a-278 (b), and possession with intent to sell one kilogram or more of marijuana in violation of § 21a-278 (b). The trial court, *McMahon, J.*, granted the defendant's motion to suppress his postarrest voluntary statement and evidence of a shipping receipt obtained in a search incident to his arrest on the grounds that the police lacked probable cause for the underlying arrest. This suppression led to a dismissal of the charges. Pursuant to § 54-96, the state requested permission to file an appeal. The trial court denied that motion. The state appealed to the Appellate Court from that denial, and sought to challenge on that appeal the granting of the motion to suppress. The Appellate Court upheld the trial court's denial of permission to appeal, and did not reach the substantive merits of the case because it had dismissed the state's appeal for lack of subject matter jurisdiction. *State* v. *James*, 64 Conn.

[4] General Statutes § 53a-48 (a) provides: "A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy."

[5] General Statutes § 21a-278 (b) provides in relevant part: "Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any narcotic substance, hallucinogenic substance other than marijuana, amphetamine-type substance, or one kilogram or more of a cannabis-type substance except as authorized in this chapter, and who is not at the time of such action a drug-dependent person, for a first offense shall be imprisoned not less than five years nor more than twenty years; and for each subsequent offense shall be imprisoned not less than ten years nor more than twenty-five years. . . ."

App. 495, 501, 779 A.2d 1288 (2001). This certified appeal followed.[6]

The following facts and procedural history are relevant for the resolution of the state's claims in this appeal. After a "controlled delivery"[7] of a package containing marijuana by an undercover police detective to the defendant's workplace in West Hartford, the defendant was arrested for attempted possession of four ounces or more of marijuana, possession of four ounces or more of marijuana, conspiracy to transport with intent to sell one kilogram or more of marijuana, attempt to possess with intent to sell one kilogram or more of marijuana, and possession with intent to sell one kilogram or more of marijuana. Thereafter, the defendant moved to suppress, as involuntary, certain written statements that he had made.[8] The trial court denied that motion. The defendant then moved to dismiss the charges on the basis that the police lacked probable cause to arrest him. An evidentiary hearing was held on that motion, at which the defendant made an oral motion to suppress certain other evidence, consisting of his written confession and a Federal Express shipping receipt discovered on the defendant in a search incident to his arrest. The trial court granted that motion

---

[6] We granted the state's petition for certification to appeal, limited to the following issues: "1. Was the Appellate Court correct in refusing to incorporate the inquiry of *Lozada* v. *Deeds*, [supra, 498 U.S. 432], into the abuse of discretion standard of review of denials of state requests for permission to appeal?" and "2. If not, was the Appellate Court nevertheless correct in dismissing the state's appeal?" *State* v. *James*, 258 Conn. 912, 782 A.2d 1249 (2001).

[7] We describe the events of the "controlled delivery" of the marijuana and the defendant's subsequent arrest in more detail in part III B of this opinion.

[8] Although the statements themselves are not at issue here, facts adduced at that suppression hearing are relevant to the disposition of this appeal.

to suppress, concluding that the police lacked probable cause to arrest the defendant.[9]

The state moved in the trial court for reconsideration of its suppression decision on the basis that the subsequently obtained evidence was sufficiently attenuated from the arrest to be admissible, even if the arrest was considered to have been illegal. The state also moved for written articulation of the trial court's decision on the motion to suppress. In addressing these motions, the trial court orally articulated its position with regard to probable cause and stated that the evidence seized was not sufficiently attenuated from the illegal arrest to be admissible.

Subsequent to this articulation, the trial court granted the defendant's motion for dismissal of all charges. The trial court also stated that, with respect to the probable cause determination, "[t]he sole issue" that it had to decide was what had actually transpired during the course of the arrest. The court explained that, based upon its own knowledge and experience, probable cause did not exist on the facts of this case and that, therefore, the "evidence seized and the statements made by the defendant [were] fruit of the poisonous tree and tainted by the illegal arrest." After the case was dismissed, the state immediately moved for permission to appeal pursuant to § 54-96.

The trial court refused to grant the state permission to appeal, citing *State* v. *McMillan*, 51 Conn. App. 676, 725 A.2d 342, cert. denied, 248 Conn. 911, 732 A.2d 179 (1999), for the applicable abuse of discretion standard of review under § 54-96. The trial court stated that, pursuant to *McMillan*, the only question it had to ask

---

[9] The trial court stated that the police had sufficient evidence to stop the defendant for further investigation pursuant to *Terry* v. *Ohio*, 392 U.S. 1, 20–21, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968) (reasonable and articulable suspicion), but not enough evidence to justify an arrest of the defendant.

itself in denying the state permission to appeal was, "Did I abuse my discretion?" The trial court answered: "I don't think so," and explained that an appeal was unnecessary because its probable cause determination was based on "a full evidentiary hearing" with witnesses, arguments, and motions for articulation and reconsideration.

The state appealed from the trial court's denial of permission to the Appellate Court. *State* v. *James*, supra, 64 Conn. App. 495. The state claimed that a trial court's denial of the state's request for permission to appeal is subject to the inquiry of *Lozada* v. *Deeds*, supra, 498 U.S. 432, as is the denial of certification of a petition to appeal from the denial of a petition for a new trial, *Seebeck* v. *State*, 246 Conn. 514, 534, 717 A.2d 1161 (1998), and the denial of a petition for certification to appeal from the dismissal of a habeas corpus petition, *Simms* v. *Warden*, 230 Conn. 608, 616, 646 A.2d 126 (1994). See *State* v. *James*, supra, 498–99. The state argued that denial of permission for its appeal "constitutes an abuse of discretion if the state demonstrates that another court could resolve the issue in a different manner." Id., 498. The Appellate Court rejected the state's claims and held that the trial court did not engage in "such clear, arbitrary and extreme abuse of discretion that we can conclude that an injustice appears to have been done." Id., 500. It then dismissed the appeal for lack of subject matter jurisdiction, noting that the trial court's grant of permission to appeal under § 54-96 is a jurisdictional prerequisite. Id., 501. This certified appeal followed.

I

We first consider whether the Appellate Court improperly refused to incorporate the three factor inquiry articulated by the United States Supreme Court in *Lozada* v. *Deeds*, supra, 498 U.S. 432, into the abuse

of discretion standard that governs our review of a trial court's decision to deny the state permission to appeal pursuant to § 54-96. The defendant argues that the *Lozada* inquiry is applicable only where a criminal defendant's federal right is at issue. The defendant also argues that application of the *Lozada* inquiry would "diminish to a virtual nullity" the trial court's discretion in the § 54-96 context. We agree with the state and conclude that the Appellate Court improperly failed to adopt the three factor inquiry of *Lozada* v. *Deeds*, supra, 432. For the reasons discussed herein, we hold that a trial court has abused its discretion in denying permission to appeal under § 54-96 if the state demonstrates that: (1) "the issues are debatable among jurists of reason"; (2) "a court could resolve the issues [in a different manner]"; or (3) the questions are "adequate to deserve encouragement to proceed further." (Internal quotation marks omitted.) Id.

### A

It is well established that trial court denials of permission for state's appeals under § 54-96 are subject to review for "clear and extreme" abuse of discretion. See, e.g., *State* v. *Bergin*, 214 Conn. 657, 660–61, 574 A.2d 164 (1990); *State* v. *S & R Sanitation Services, Inc.*, 202 Conn. 300, 308, 521 A.2d 1017 (1987); *State* v. *Avcollie*, 174 Conn. 100, 109–11, 384 A.2d 315 (1977); *State* v. *Anonymous*, 55 Conn. App. 250, 252–53, 739 A.2d 298 (1999). Although the abuse of discretion standard is highly deferential to the trial court, when denial of permission to appeal under § 54-96 presents a "manifest abuse . . . where injustice appears to have been done," the "statute's condition requiring the [trial] court's permission to appeal cannot serve to insulate a trial court from review by this court . . . ." *State* v. *Avcollie*, supra, 110.

A trial court's discretion under § 54-96 is certainly not unfettered. Even when a trial court's decision deny-

ing the state permission to appeal questions of law under § 54-96 is based upon "considered reasons," the deferential standard of review will not insulate the decision from appellate review if the decision is rooted in incorrect legal principles. For example, in *State* v. *Bergin*, supra, 214 Conn. 661, we held that, even where a trial court issued a four page memorandum of decision on issues briefed by the parties, it nonetheless had abused its discretion in denying the state permission to appeal.[10] *Bergin*, which is similar to the present case, also involved a probable cause determination by the trial court. Id., 661–62. In *State* v. *Bergin*, supra, 661, we referred to probable cause as an issue of law that we "[often review]," despite the trial court's mislabeling of what are, "under the governing precedents, appealable legal issues" as "factual determinations . . . ." Id., 662; see also *State* v. *Clark*, 255 Conn. 268, 279, 764 A.2d 1251 (2001). In *State* v. *Bergin*, supra, 662–63, we noted: "Confidence in our judicial system would be severely eroded if the trial court had the authority to dismiss charges against this defendant before trial on an unsound premise, and could then insulate its decision from appellate review."[11] Despite the otherwise deferential standard of review, where issues of law are involved, it is absolutely imperative that "the trial judge recognized his [or her] obligation 'to play fair with the system.' " *State* v. *S & R Sanitation Services, Inc.*, supra, 202 Conn. 312.

---

[10] But see, *State* v. *S & R Sanitation Services, Inc.*, supra, 202 Conn. 312. In *S & R Sanitation Services, Inc.*, we noted that, in denying the state permission to appeal under § 54-96, the trial court recognized its "obligation 'to play fair with the system' " by accompanying its denial with detailed explanatory memoranda and extensive additional articulation. Id. *S & R Sanitation Services, Inc.*, is easily distinguishable from *Bergin* and the present case, however, because in *S & R Sanitation Services, Inc.*, the trial court did not mislabel the issue at hand as a factual issue when it was really a question of law.

[11] As we noted in *State* v. *Bergin*, supra, 214 Conn. 663, "[p]retrial dismissal of criminal charges in any type of case is such a drastic remedy that it should not be resorted to lightly."

## B

The *Lozada* inquiry was established in order to determine whether a petitioner has made the requisite "substantial showing of the denial of a federal right" for the issuance of the required certificate of probable cause to appeal the denial of federal habeas relief under 28 U.S.C. § 2253, and *Barefoot* v. *Estelle*, 463 U.S. 880, 893, 103 S. Ct. 3383, 77 L. Ed. 2d 1090 (1983). *Lozada* v. *Deeds*, supra, 498 U.S. 432. In *Lozada*, the United States Supreme Court held that the required "substantial showing" was made if the petitioner "demonstrate[s] that the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further." (Internal quotation marks omitted.) Id. In the federal courts, the probable cause certificate serves the same policy goal as the granting of permission or certification to appeal does in Connecticut, namely, to screen out frivolous appeals while still protecting the litigants' statutory right[12] to appellate review of adverse determinations. See, e.g., *Barefoot* v. *Estelle*, supra, 892–93; *Seebeck* v. *State*, supra, 246 Conn. 533; *Simms* v. *Warden*, supra, 230 Conn. 616. The *Lozada* inquiry already provides us with well marked guideposts for the exercise of trial court discretion in two other areas of appeals requiring permission or certification to appeal. See, e.g., *Seebeck* v.

---

[12] It is well established that there is no constitutional right to an appeal for either the state or the defendant in a criminal case. See, e.g., *Abney* v. *United States*, 431 U.S. 651, 656, 97 S. Ct. 2034, 52 L. Ed. 2d 651 (1977) ("[t]he right of appeal, as we presently know it in criminal cases, is purely a creature of statute"); *State* v. *Curcio*, 191 Conn. 27, 30, 463 A.2d 566 (1983) ("The right of appeal is purely statutory. It is accorded only if the conditions fixed by statute and the rules of court for taking and prosecuting the appeal are met."); *State* v. *Falzone*, 171 Conn. 417, 417–18, 419, 370 A.2d 988 (1976) (noting that "[t]here is . . . no common-law right of appeal by the state in criminal matters," but that "[t]he right of the defendant in a criminal action to appeal . . . is an ancient *statutory* right" [emphasis added]).

*State*, supra, 534 (denial of permission to appeal denial of petition for new trial); *Simms* v. *Warden*, supra, 615–16 (denial of certification to appeal denial of writ of habeas corpus).

In *Simms* v. *Warden*, supra, 230 Conn. 615, we held that the abuse of discretion standard governing the review of denials of permission for state's appeals under § 54-96 was also applicable to denials of petitioners' timely requests for certification to appeal adverse habeas corpus determinations pursuant to General Statutes § 52-470 (b).[13] We stated, however, that, in the habeas corpus context, the abuse of discretion standard required "amplification . . . ." Id. Accordingly, we held in *Simms* that "in an appeal under § 52-470 (b), a petitioner will establish a clear abuse of discretion in the denial of a timely request for certification to appeal if he can demonstrate the existence of one of the *Lozada* criteria . . . ." Id., 616. Considering the legislature's intent to discourage frivolous appeals via the enactment of § 52-470, we concluded that "[a] habeas appeal that satisfies one of the *Lozada* criteria is not frivolous." Id.

We further expanded the application of the *Lozada* inquiry to denials of petitions for certification to appeal the denial, pursuant to General Statutes § 54-95 (a),[14] of a request for a new trial in *Seebeck* v. *State*, supra, 246

---

[13] General Statutes § 52-470 (b) provides: "No appeal from the judgment rendered in a habeas corpus proceeding brought in order to obtain his release by or in behalf of one who has been convicted of crime may be taken unless the appellant, within ten days after the case is decided, petitions the judge before whom the case was tried or a judge of the Supreme Court or Appellate Court to certify that a question is involved in the decision which ought to be reviewed by the court having jurisdiction and the judge so certifies."

[14] General Statutes § 54-95 (a) provides in relevant part: "No appeal may be taken from a judgment denying a petition for a new trial unless, within ten days after the judgment is rendered, the judge who heard the case or a judge of the Supreme Court or the Appellate Court, as the case may be, certifies that a question is involved in the decision which ought to be reviewed by the Supreme Court or by the Appellate Court. . . ."

Conn. 533–34. In *Seebeck*, we first noted the "virtually identical" statutory language and policy basis of discouraging frivolous appeals that underlie both §§ 54-95 (a) and 52-470, the statute at issue in *Simms*. Id., 534. We then concluded that "a petitioner can establish a clear abuse of discretion in a trial court's denial, pursuant to § 54-95 (a), of a timely request for certification to appeal a denial of a petition for a new trial by establishing one of the three *Lozada* criteria." Id.

C

The defendant argues that the Appellate Court properly concluded that the *Lozada* inquiry is inapplicable to denials of state requests for permission to appeal. First, the defendant claims that *Lozada* is applicable only to situations where a *criminal defendant* is asserting a *federal right*. Alternatively, the defendant argues that incorporation of the *Lozada* inquiry into the abuse of discretion standard would eviscerate, by "diminish[ing] to a virtual nullity," the trial court's discretion in determining whether to grant the state permission to appeal. We disagree.

First, we have already effectively applied the *Lozada* inquiry in the habeas corpus context, where parties other than criminal defendants or habeas petitioners have petitioned for certification to appeal. Section 52-470 (b), the habeas corpus statute at issue in *Simms*, uses the neutral term "appellant" to designate the party who must seek court certification for an appeal. This is illustrated in *Rivera* v. *Commissioner of Correction*, 254 Conn. 214, 217, 756 A.2d 1264 (2000), wherein the habeas petitioner brought a petition alleging that he improperly had been denied good time credit. The trial court agreed with the petitioner and awarded him good time credit. Id., 220. The trial court then denied the commissioner of correction's petition for certification to appeal pursuant to § 52-470 (b). Id. The commissioner

appealed from the denial to the Appellate Court, which dismissed the appeal, holding that none of the *Lozada* criteria had been met and that, therefore, "the [habeas] court did not abuse its discretion in denying the [commissioner's] certification to appeal." (Internal quotation marks omitted.) Id., 224. On appeal from that determination, we reversed the Appellate Court, holding that the habeas court did in fact abuse its discretion in denying permission to appeal because the commissioner had raised a "colorable claim" sufficient to satisfy the *Lozada* inquiry.[15] Id., 227.

Similarly, in *Copas* v. *Commissioner of Correction*, 234 Conn. 139, 149, 662 A.2d 718 (1995), the habeas court held that the petitioner had received ineffective assistance of counsel at the time of his guilty plea. The habeas court then denied the commissioner's petition for certification pursuant to § 52-470 (b) for an appeal to the Appellate Court. Id., 149–50. Reviewing the denial of certification, we held that the habeas court had abused its discretion in denying the petition for certification because it was unclear if the habeas court had applied the proper prejudice standard of *Hill* v. *Lockhart*, 474 U.S. 52, 59, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985),[16] to the habeas petitioner's claim of ineffective assistance of counsel at the time of his guilty plea. *Copas* v. *Commissioner of Correction*, supra, 151. Our prior decisions in the habeas corpus context indicate that the *Lozada* criteria, as a screening procedure for

[15] We ultimately held against the commissioner of correction on other grounds, irrelevant to whether the trial court abused its discretion in its refusal to certify the appeal. *Rivera* v. *Commissioner of Correction*, supra, 254 Conn. 227.

[16] In *Hill* v. *Lockhart*, supra, 474 U.S. 59, the United States Supreme Court elaborated on the prejudice prong of *Strickland* v. *Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), and held that in the context of a guilty plea, the "defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."

determining whether an appeal is frivolous, apply equally, neutrally and effectively to *any* prospective appellant. Accordingly, we reject the defendant's argument that the *Lozada* inquiry is applicable only to review of situations where a criminal defendant is asserting a federal right.

The defendant also argues that application of the *Lozada* inquiry in the context of § 54-96 will "diminish to a virtual nullity" the trial court's discretion in determining whether to grant the state permission to appeal.[17] We disagree. The *Lozada* inquiry provides the same clear and intelligible standards for trial courts exercising their gatekeeping discretion under § 54-96 as it does in the contexts of certifying appeals in habeas corpus and petitions for new trials. Without clearly defined criteria for determining whether a prospective appeal is frivolous, trial courts exercising § 54-96 discretion might consider themselves confined to the same circular and self-answering inquiry that the trial court undertook in this case.[18] Discretionary decision-making without the benefit of clearly defined guideposts, such as those set forth in *Lozada,* is predisposed to be arbitrary. See *State* v. *S & R Sanitation Services, Inc.,* supra, 202 Conn. 312, quoting Black's Law Dictionary (5th Ed. 1979) (" '[a]rbitrary' means '[w]ithout adequate determining principle . . . not governed by any fixed rules or standard' "). In a highly regarded and often

---

[17] The defendant also argues that the deferential, permissive language of § 54-96 implies that "the legislature did not intend that permission to appeal be granted in every case in which it is sought." This does not mean, however, that the "legislature . . . intended to vest in a trial judge such arbitrary authority to preclude appellate review of his own decisions." *State* v. *S & R Sanitation Services, Inc.,* supra, 202 Conn. 315 (*Shea, J.,* dissenting).

[18] The idea of any court reviewing its *own* decision-making for abuse of discretion seems to be a logical impossibility that could realistically yield only one answer. Cf. *State* v. *S & R Sanitation Services, Inc.,* supra, 202 Conn. 315 (*Shea, J.,* dissenting) ("[i]t is fundamental that one cannot be a judge in his own case").

cited law review article criticizing the "abracadabra" inherent in the terms " 'abuse of discretion' " or " 'discretion,' " the late scholar Maurice Rosenberg noted that "[i]n the past [appellate court] opinions have fallen far short of satisfactorily defining or refining the concept of abuse of discretion. This need not be true if the appellate courts will bring themselves to appreciate the need for guidelines." M. Rosenberg, "Judicial Discretion of the Trial Court, Viewed from Above," 22 Syracuse L. Rev. 635, 667 (1971).[19] Accordingly, we disagree with the defendant's arguments because the *Lozada* inquiry provides an appropriate analytic framework, consistent with the remainder of our permissive appeal jurisprudence, to guide the exercise of trial court discretion in cases involving § 54-96.

## II

In light of our conclusion that the *Lozada* inquiry does apply to a denial of a request for permission to appeal pursuant to § 54-96, we conclude that the Appellate Court improperly dismissed the state's appeal. Probable cause issues, like those presented in this case, are questions of law; see, e.g., *State* v. *Smith*, 257 Conn. 216, 223, 777 A.2d 182 (2001); that may satisfy either of the first two factors delineated in the *Lozada* inquiry we have adopted herein. We have noted: "Probable cause is not readily, or even usefully, reduced to a neat set of legal rules. . . . Reasonable minds may disagree as to whether a particular [set of facts] establishes probable cause." (Internal quotation marks omitted.) *State* v. *Eady*, 249 Conn. 431, 440, 733 A.2d 112, cert. denied, 528 U.S. 1030, 120 S. Ct. 551, 145 L. Ed. 2d 428

---

[19] See, e.g., *In re Lawrence*, United States Court of Appeals, Docket No. 00-5069 (2d Cir. May 22, 2002) (quoting article and stating that "we have previously acknowledged Rosenberg's expertise in the area of abuse of discretion review"); *Restor-A-Dent Dental Laboratories, Inc.* v. *Certified Alloy Products, Inc.*, 725 F.2d 871, 877 n.6 (2d Cir. 1984) (describing Rosenberg article as "perceptive").

(1999). As the defendant conceded at oral argument before this court, the very nature of the probable cause issues presented in this case make them "debatable among jurists of reason" or subject to resolution in a different manner. (Internal quotation marks omitted.) *Lozada* v. *Deeds*, supra, 498 U.S. 432. This is such a case. We conclude that, therefore, the Appellate Court improperly dismissed the appeal because, under the *Lozada* inquiry, the trial court abused its discretion in denying the state permission to appeal the adverse probable cause determination under § 54-96.

### III

The state also has requested that this court reach, "in the interest of judicial economy," the substantive question of whether probable cause existed in the present case. In its dismissal of the state's appeal, the Appellate Court concluded that it did not have the subject matter jurisdiction to reach the merits of the underlying probable cause issue. *State* v. *James*, supra, 64 Conn. App. 500–501. We now grant the state's request and will invoke our supervisory powers, pursuant to Practice Book § 60-2,[20] in order to reach the probable cause issue. For reasons discussed herein, we hold that the trial court improperly concluded that, as a matter of law, there was no probable cause to arrest the defendant.

### A

As a threshold matter, we must first determine whether the exercise of our supervisory powers pursu-

---

[20] Practice Book § 60-2 provides in relevant part: "The supervision and control of the proceedings on appeal shall be in the court having appellate jurisdiction from the time the appeal is filed, or earlier, if appropriate, and, except as otherwise provided in these rules, any motion the purpose of which is to complete or perfect the trial court record for presentation on appeal shall be made to the court in which the appeal is pending. The court may, on its own motion or upon motion of any party, modify or vacate any order made by the trial court, or a judge thereof, in relation to the prosecution of the appeal. . . ."

ant to Practice Book § 60-2 is appropriate in the present case. "Normally, when we conclude that the Appellate Court has improperly failed to reach an issue concerning a decision by the trial court, we remand the case to that court for consideration of the merits of that issue. Under our supervisory powers over proceedings on appeal, however, this court also has the authority to address the subject of the trial court's decision." *Ahneman* v. *Ahneman*, 243 Conn. 471, 481, 706 A.2d 960 (1998); see also *Matza* v. *Matza*, 226 Conn. 166, 189, 627 A.2d 414 (1993) (invoking supervisory power where "Appellate Court should have considered the claim"). Furthermore, even if the actual subject of the trial court's decision is not an issue originally certified for appeal to this court, the exercise of our supervisory authority to address it is appropriate when the record is adequate to allow review of the merits and the parties have briefed the issues. *Ahneman* v. *Ahneman*, supra, 482; see also *West Hartford Interfaith Coalition, Inc.* v. *Town Council*, 228 Conn. 498, 507, 636 A.2d 1342 (1994) (reviewing unpreserved claim under general supervisory and control power "[i]n view of the adequate record . . . and the significance of the issue to . . . the parties"). Invocation of our supervisory powers where appropriate also carries the benefit of "avoid[ing] the necessity of inordinate further delay . . . ." (Citation omitted; internal quotation marks omitted.) *Ahneman* v. *Ahneman*, supra, 482.

In the present case, the record is adequate for our review of the trial court's probable cause determination. The record includes more than 140 pages of transcripts of three witnesses' testimony and counsel's argument from the evidentiary hearings held on June 8, 1999, and July 13 and 14, 1999. The record also includes sufficient findings of fact by the trial court. Furthermore, both the state and the defendant have thoroughly briefed the probable cause issue for our consideration. We con-

clude, therefore, that the exercise of our supervisory power in the interest of judicial economy is appropriate in this case, and we now turn to the merits of the issue.

B

The following additional facts are necessary for the resolution of this appeal. On June 5, 1997, Federal Express informed the West Hartford police that their drug-sniffing dogs had detected marijuana in two boxes addressed to the Har-Conn Chrome Company (Har-Conn) in West Hartford. With the Federal Express manager present, the West Hartford police officers unsealed the boxes at the Federal Express office in East Hartford and found a blue Igloo cooler in each box. The two large Igloo coolers contained approximately forty-eight pounds of marijuana between them.[21] The detectives removed much of the marijuana from one of the boxes and replaced it with sand and other weights before delivering the package to Har-Conn.[22]

On June 6, 1997, the West Hartford police delivered the box to Har-Conn, with Detective Paul Melanson acting in an undercover role as a Federal Express driver. The other police officers surrounded the perimeter of Har-Conn's premises and monitored Melanson's activities via a "body wire" that he wore. The delivery did not take place during the usual morning delivery time for Federal Express packages. Upon his arrival at Har-Conn, Melanson delivered the package to John Chen, whom Melanson understood from a prior briefing with the actual Federal Express driver to be the person who normally received all Har-Conn packages. After Chen

---

[21] The presence of marijuana was confirmed by a test by the police prior to delivery of the package to Har-Conn.

[22] According to Detective Paul Melanson, this procedure is known as a "controlled delivery." After removing and replacing most of the contraband, the police will deliver the altered package to its destination and check to see who will accept it there. They will then arrest the recipient, if the delivery circumstances so warrant.

signed the Federal Express paperwork for the box, Melanson remained on the Har-Conn premises by asking to use the bathroom. He then saw Chen open the box, look inside, and remark to a coworker that this was "Joe's package . . . ." Chen then paged "Joe" via the building's public address system.

Melanson attempted to stay in the area and watch. In order to avoid suspicion, he walked out of the building and reentered the shipping area a short time later through another door. When he returned to the shipping area, the package was no longer there. In order to track the location of the package, Melanson told Chen that he had signed the form in the incorrect location and that Melanson needed the package back in order to correct the paperwork. At that point, the defendant entered the receiving area. Chen pointed to the defendant and told Melanson that the package belonged to the defendant. Chen then told the defendant to ask Melanson about the location of a second package. When the defendant asked Melanson about a second package, Melanson replied that there was only one package to deliver. The defendant then turned around, exited the building, and walked down the driveway. When the defendant left the Har-Conn building and walked down the driveway, he was carrying two lawnmower blades.

Melanson then used his body wire to contact Lieutenant Carl Rosensweig, the detective in charge of the investigation. In this communication, Melanson described the defendant in detail, informed Rosensweig that the defendant had received the package, and stated that the defendant was carrying a metal object. Rosensweig then observed the defendant walking quickly down Har-Conn's driveway toward his vehicle. Rosensweig and another detective then approached the defendant, ordered him to the ground at gunpoint, handcuffed him, and patted him down to check for weapons. This initial patdown yielded the lawnmower blade that the

defendant was carrying and a subsequent body search incident to the arrest yielded a Federal Express shipping receipt.

After the police officers had arrested the defendant, Melanson returned to question Chen about the location of the box itself. Chen stated that "Joe" had taken the box around the corner inside the Har-Conn building. After Rosensweig obtained consent to search the building from William Livingston, Har-Conn's vice president, the police officers found the package in a room around the corner from the shipping area where it had been initially received.[23]

In the present case, the admissibility of the evidence at issue depends on whether the underlying warrantless felony arrest was sufficiently grounded in probable cause.[24] "As a threshold matter, we set forth the appropriate standard pursuant to which we review a challenge to a trial court's granting of a suppression motion. This involves a two part function: where the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision . . . . Where . . . the trial

---

[23] It should be noted that the police officers never saw the defendant in possession of the box and lacked actual awareness of his proximity to the Federal Express package.

[24] At issue here is whether the Federal Express shipping receipt and the defendant's postarrest voluntary statement were lawfully obtained. If the arrest is held valid, then the shipping receipt at issue was lawfully obtained in a search of the defendant incident to a "lawful custodial arrest." *State* v. *Clark*, supra, 255 Conn. 291; see also *Chimel* v. *California*, 395 U.S. 752, 762–63, 89 S. Ct. 2034, 23 L. Ed. 2d 685 (1969). If the arrest is invalid for lack of probable cause, then the defendant's voluntary statement may, if not sufficiently attenuated from the illegal arrest, also be invalid as "fruit of the poisonous tree." *Brown* v. *Illinois*, 422 U.S. 590, 598, 95 S. Ct. 2254, 45 L. Ed. 2d 416 (1975); *Wong Sun* v. *United States*, 371 U.S. 471, 487–88, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963); *State* v. *Blackman*, 246 Conn. 547, 556–57, 716 A.2d 101 (1998); *State* v. *McLucas*, 172 Conn. 542, 556, 375 A.2d 1014, cert. denied, 434 U.S. 855, 98 S. Ct. 174, 54 L. Ed. 2d 126 (1977).

court has drawn conclusions of law, our review is plenary, and we must decide whether those conclusions are legally and logically correct in light of the findings of fact." (Internal quotation marks omitted.) *State* v. *Smith*, supra, 257 Conn. 222, quoting *State* v. *Velasco*, 248 Conn. 183, 188–89, 728 A.2d 493 (1999). Accordingly, we will engage in plenary review of the trial court's legal conclusion that probable cause to arrest the defendant did not exist on the facts of this case.

In *State* v. *Clark*, supra, 255 Conn. 291–93, we reviewed the well established legal principles governing probable cause in the context of warrantless felony arrests. "In order for a warrantless felony arrest to be valid, it must be supported by probable cause. . . . The determination of whether probable cause exists under the fourth amendment to the federal constitution, and under article first, § 7, of our state constitution, is made pursuant to a totality of circumstances test. . . . Probable cause exists when the facts and circumstances within the knowledge of the officer and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution to believe that a felony has been committed. . . . The probable cause test then is an objective one. . . .

"We consistently have held that [t]he quantum of evidence necessary to establish probable cause exceeds mere suspicion, but is substantially less than that required for conviction. . . . The existence of probable cause does not turn on whether the defendant could have been convicted on the same available evidence. . . . [P]roof of probable cause requires less than proof by a preponderance of the evidence. . . . Probable cause, broadly defined, comprises such facts as would reasonably persuade an impartial and reasonable mind not merely to suspect or conjecture, but to believe that criminal activity has occurred. . . . The probable cause determination is, simply, an analysis of probabili-

ties. . . . The determination is not a technical one, but is informed by the factual and practical considerations of everyday life on which reasonable and prudent [persons], not legal technicians, act. . . . Probable cause is not readily, or even usefully, reduced to a neat set of legal rules. . . . Reasonable minds may disagree as to whether a particular [set of facts] establishes probable cause." (Citations omitted; internal quotation marks omitted.) Id., 292–93.

Under the totality of the circumstances in the present case, we conclude that probable cause for the defendant's arrest did exist. Given the facts at hand, a sufficient nexus clearly existed between the defendant and both of the marijuana packages at issue to establish probable cause to arrest. Moreover, in determining whether probable cause existed to arrest the defendant, the trial court incorrectly focused on the police officers' actions with respect to investigating Chen's role in any potential criminal activity. The trial court also improperly treated Chen's statements with respect to the defendant as having originated from an informant and being subject to the analysis of *State* v. *Barton*, 219 Conn. 529, 544, 594 A.2d 917 (1991), and *Illinois* v. *Gates*, 462 U.S. 213, 230–31, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983). We conclude that these largely irrelevant concerns about Chen inappropriately undermined the analysis of the probabilities that should have reasonably persuaded an impartial mind that sufficient probable cause existed to arrest the defendant.

Bearing in mind that our inquiry is limited to what the police knew *before* the arrest; see, e.g., *State* v. *Trine*, 236 Conn. 216, 236–37, 673 A.2d 1098 (1996); we conclude that a sufficient nexus existed between the defendant and the controlled packages at issue to establish probable cause for his arrest. First, Melanson observed Chen, the usual recipient of packages at Har-Conn, open the delivered package, look inside, and

remark to a coworker that this was "Joe's package . . . ." Chen then called for "Joe" over the building's public address system. After Melanson, who still appeared to be a Federal Express driver, stalled for time by pretending that the package needed to be signed for again, the defendant entered the shipping area. When Melanson asked about the package, Chen told him that the package belonged to the defendant. Albeit at Chen's suggestion, the defendant asked Melanson about the location of a *second* package—a particularly probative question given that Federal Express had intercepted and turned over *two* packages to the police, while only *one* was delivered. The entire interaction between Chen, the defendant, and Melanson could persuade "an impartial and reasonable mind . . . that criminal activity ha[d] occurred." (Internal quotation marks omitted.) *State* v. *Clark*, supra, 255 Conn. 293.

The trial court also improperly focused on Chen's culpability and the need to eliminate him as a suspect before determining that sufficient probable cause existed to justify the defendant's arrest. The trial court referred to Chen's receiving responsibilities and stated: "I think a reasonably prudent person would think that the number one suspect would be the person who ordinarily receives this package, unless other evidence is shown."[25] It is unnecessary and improper for a probable cause inquiry to focus on anyone besides the particular

[25] The trial court elaborated: "Now, there's no evidence that [the defendant] was hanging around, waiting for the package or anything to that effect; that he was in a position to exercise control and dominion over packages. It, in fact, would be the receiving clerk that would initially exercise control and dominion over that package. . . . We get to that point. Then the officer overhears Mr. Chen, suspect number one, say this is Joe's package. He pages a Joe. Some time shortly thereafter, after the officer leaves and comes back, the defendant enters. . . . I accept it as a fact for the purposes of my finding, Mr. Chen indicates it's Joe's package. And he says to Joe, 'Why don't you ask him about the second package.' And Joe says, 'Where's the second package?' "

*defendant* at issue in the case. It is well established that "[p]robable cause to arrest exists if (1) there is probable cause to believe a crime has been committed; and (2) there is probable cause to believe *that the person to be arrested committed that crime.*" (Emphasis added; internal quotation marks omitted.) *State* v. *Trine,* supra, 236 Conn. 236; see also, e.g., *Golino* v. *New Haven,* 950 F.2d 864, 870 (2d Cir. 1991). Although Chen's level of involvement with the package may be potentially relevant for the purposes of determining the defendant's guilt at *trial,*[26] it was immaterial for determining probable cause at the time of arrest; accordingly, further investigation was not required into Chen's role before arresting the defendant. Therefore, any intimation by the trial court that the police should have engaged in further investigation into Chen before arresting the defendant was legally incorrect. Even if Chen truly was the "number one suspect," that did not negate the ample probable cause that existed to justify the defendant's arrest.

The trial court also improperly made reference to Chen as an informant. Specifically, the trial court stated: "So the two factors that the police have to base anything in reference to this defendant is Mr. Chen, who there's no indicia of reliability, who is even a suspect even after the arrest, by the police own admission, saying it's Joe's. The only admission on the part of the defen-

---

[26] Determining the existence of probable cause to arrest is an inquiry wholly separate from that of guilt at trial. See *State* v. *Clark,* supra, 255 Conn. 292–93; see also *Curley* v. *Suffern,* 268 F.3d 65, 70 (2d Cir. 2001) ("Nor does it matter that an investigation might have cast doubt upon the basis for the arrest. . . . Before making an arrest, if the arresting officer has probable cause, he need not also believe with certainty that the arrestee will be successfully prosecuted." [Citation omitted.]); *Ricciuti* v. *New York City Transit Authority,* 124 F.3d 123, 128 (2d Cir. 1997) ("[o]nce a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest").

dant that I let in in the prior motion to suppress was, Where's the second package? Which is almost repeating verbatim what Mr. Chen says."

Chen's reliability was irrelevant to the probable cause determination in the present case because he was not acting as an informant when he spoke to Melanson, who was undercover as a Federal Express driver at the time of their interaction. Although reliability is a factor to be considered when determining whether an informant's statements give rise to probable cause; see, e.g., *State* v. *Barton*, supra, 219 Conn. 544;[27] it was not at issue here. Chen was not acting as an informant giving information to the police; he was acting as a shipping and receiving clerk directing a Federal Express driver to the recipient of a delivered package. Cf. *State* v. *Mordowanec*, 259 Conn. 94, 112, 788 A.2d 48, cert. denied, 536 U.S. 910, 122 S. Ct. 2369, 153 L. Ed. 2d 189 (2002), quoting *State* v. *Barton*, supra, 542 n.10 (describing and distinguishing informants from other sources of information for police); see also Black's Law Dictionary (6th Ed. 1990) (defining "informer" as "[a]n undisclosed person who confidentially discloses material information of a law violation, thereby supplying a lead to officers for their investigation of a crime"). Accordingly, because Chen was not acting as an informant providing a tip to a police officer, his reliability bore no relevance to the probable cause inquiry at issue.

On the quantum of the facts at hand, there were sufficient facts to persuade a reasonably prudent and impartial mind that the defendant was involved in the criminal activity that occurred. We conclude that the

---

[27] The " 'totality of the circumstances' " analysis of *State* v. *Barton*, supra, 219 Conn. 544, and *Illinois* v. *Gates*, supra, 462 U.S. 230–31, considers the reliability of the confidential informant and the informant's basis of knowledge as significant factors in determining whether a confidential informant's tip has furnished sufficient probable cause to justify a search or an arrest.

trial court improperly determined that the police lacked probable cause to arrest the defendant.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to reverse the trial court's judgment of dismissal, and to remand the case to the trial court with direction to deny the motion to suppress and for further proceedings according to law.

In this opinion the other justices concurred.